UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Gerald Schnapp,                                                    Case No. 3:20-cv-67

        Plaintiff,

    v.                                                                    MEMORANDUM OPINION
                                        AND ORDER

FCA US LLC,

        Defendant.

## I.    INTRODUCTION

On January 13, 2020, Plaintiff Gerald Schnapp filed a complaint against his employer Defendant FCA US LLC, alleging an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Doc. No. 1). On July 16, 2021, FCA filed a motion for summary judgment, (Doc. No. 19), which has been fully briefed. (*See* Doc. Nos. 23 & 24). For the reasons stated below, I grant FCA's motion for summary judgment.

## II.    BACKGROUND

Schnapp was born November 19, 1966, and was over the age of 40 at all times relevant to this litigation. (Doc. No. 19-2 at 6). Schnapp has been employed by FCA since May 1994; and, since 1998, has held the position of Machine Repairman at FCA's Toledo Machining Plant. (*Id.* at 17, 19). Schnapp has complained of promotion denials dating back as far as 2005 for numerous positions. (*See, e.g., id.* at 20-21, 78-80, 110-17; Doc. No. 23 at 2-3, 6). He believes he was denied many of these positions because he was overqualified. (*Id.* at 28-29); (*see id.* at 58) ("The previous times I submitted resumes . . . I wrote a lot about what I did. And after a while, I thought it was

hurting me because I was showing too much experience."). Schnapp testified his age discrimination claim specifically relates to promotion denials. (*Id.* at 23).

On July 5, 2018, Schnapp applied for an Industrial Engineer position at the Toledo Assembly Complex. (*Id.* at 53). The job posting listed both basic and preferred qualifications. (Doc. No. 19-3). Schnapp submitted an application which listed his Bachelor's and Master's degrees in Industrial Tech, and stated from February 1998 through December 2013 his job duties were "PM Machinery." (Doc. No. 19-4). The application contained no other information related to Schnapp's work history, skills, or relevant experience. (*Id.* at 2). Schnapp does not know if his professional resume was attached to this application. (Doc. No. 19-2 at 71). Schnapp was not interviewed for, nor offered, the Industrial Engineer position. (*Id.* at 59). He testified he had no reason to believe that he was not offered the position because of his age. (*Id.* at 60-61). FCA ultimately did not hire anyone for this position. (*Id.* at 61).

On July 24, 2018, Schnapp applied for a Tool & Process Engineer position at the Toledo Machining Plant. (Doc. No. 19-5). Again, the job posting listed both basic and preferred qualifications. (Doc. No. 19-6). For example, the basic qualifications required a Bachelor's degree and proficiencies in MS Office, AutoCAD, and CNC programming. (*Id.*). The preferred qualification requested specific engineering degrees. (*Id.*). Schnapp submitted the same application as before, which listed only his Bachelor's and Master's degrees and his job duties as "PM Machinery" from 1998 through 2013. (Doc. No. 19-7). The application contained no other information related to Schnapp's work history, skills, or relevant experience. (*Id.* at 2). Schnapp does not know if his professional resume was attached to this application. (Doc. No. 19-2 at 71).

Engineering Supervisor and Facilities Manager Douglas Duke[1] was responsible for the hiring decision for this position.  (Doc. No. 19-2 at 71; Doc. No. 20 at 1-2).  Duke stated several reasons why he did not interview Schnapp for the position.  First, Schnapp did not possess a degree in Mechanical Engineering, Mechanical Engineering Technology, or Electrical Engineering.  (Doc. No. 20 at 2; *see also* Doc. Nos. 19-6 & 19-7).  Pursuant to the job posting, this was a preferred qualification and all the applicants selected for an interview possessed one of these degrees.  (Doc. No. 19-6; Doc. No. 20 at 2).  Second, Schnapp's application did not identify any knowledge of, or experience with, AutoCAD or CNC programming.  (Doc. No. 20 at 2; *see also* Doc. Nos. 19-6 & 19-7).  Third, Schnapp's application "failed to demonstrate how his previous work experience satisfied any of the position requirements."  (*Id.*).  Fourth, Duke had reservations about Schnapp's behavior and apparent lack of motivation.  (Doc. No. 20 at 2-3).

These reservations arose from separate incidents.  Duke's concern regarding Schnapp's behavior involved a complaint by a co-worker, Jack Rubinsaal, who claimed Schnapp intentionally disorganized his toolbox and filled his toolbox lock with Loctite.  (*Id.*).  Both Rubinsaal and Schnapp's supervisor reported this incident to Duke.  (*Id.*).  Resolution of the incident required union involvement.  (*Id.*).  Schnapp denied any involvement in the incident and was not disciplined.  (Doc. No. 19-2 at 85-86).

Duke was also concerned about Schnapp's lack of self-direction.  (Doc. No. 20 at 3).  On multiple occasions, Duke observed Schnapp "sitting down during his shift waiting to be directed to perform work."  (*Id.*).  This was notable to Duke because Schnapp had the ability to assign his own work by accessing the "Total Maintenance System" to identify available, planned maintenance

---

[1]  Schnapp testified Duke was approximately his own age and indeed, Duke was born in 1965. (Doc. No. 19-2 at 60; Doc. No. 20 at 1).

3

assignments, but he did not. (*Id.*). Self-direction is one of the basic qualifications for the Tool & Process Engineer position. (Doc. No. 19-6).

Schnapp was not interviewed for, nor offered the position of, Tool & Process Engineer. (Doc. Nos. 19-10 & 20). Instead, FCA hired Alex Gonzalez[2] to fill the position on January 22, 2019. (Doc. No. 19-11). Gonzalez was a recent graduate with a Bachelor's in Engineering Technology. (Doc. No. 19-12 at 2, 4). His resume describes coursework and previous job experience with both CNC and AutoCAD. (*Id.* at 4). Further, he had interned at the Toledo Machining Plant as a Maintenance Supervisor where he earned positive feedback from his supervisor, had experience in FCA's WCM[3] methodologies, and Duke was familiar with his work performance and work ethic. (Doc. No. 20 at 2). Duke recommended Gonzalez be hired based on this education and work history. (*Id.* at 3).

With regard to Gonzalez's hiring and his failure to earn an interview, Schnapp testified:

When they hire someone who's fresh out of college, the same college I went to, with less grades than me, and I have a master's degree on top of mine, I have nothing else to infer but it's age discrimination.

(Doc. No. 19-2 at 75). He also testified he believed Duke's behavioral and motivational concerns were after-the-fact excuses to cover up the age discrimination. (*Id.* at 86).

On October 16, 2018, Schnapp filed a charge with the Ohio Civil Rights Commission asserting an age discrimination claim resulting from his denial of the two above-described promotions. (Doc. No. 1-1). Schnapp was issued a "Right to Sue" notice on October 17, 2019, (Doc. No. 1-2), and he timely filed his complaint on January 13, 2020. (Doc. No. 1).

---

[2] Gonzalez's exact age at the time of his hiring is not identified, but neither party disputes he is younger than Schnapp and not in a protected age class.

[3] WCM stands for World Class Manufacturing. This is a program adopted by FCA that promotes lean manufacturing and a continuous improvement philosophy with a goal towards zero waste. (Doc. No. 19 at 9 n.1).

### III.   STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the [record] . . . ,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, "the court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party." *Pittman v. Experian Info. Solutions, Inc.,* 901 F.3d 619, 627-28 (6th Cir. 2018). But, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter.'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). Ultimately, I must determine "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## IV. ANALYSIS

At the outset, I note that, while Schnapp asserts a history of promotion denials dating back almost 15 years, those prior claims are not properly before me. To proceed on an ADEA claim, a plaintiff must file an EEOC or OCRC charge within 300 days of the alleged adverse action. 29 U.S.C. §626(d)(1)(B); *see also Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001). Schnapp filed his OCRC charge on October 16, 2018, and thus, only those denials which occurred within the preceding 300 days (approximately December 2017) are timely.

Further, his OCRC charge only mentions two specific instances of promotion denial – Industrial Engineer and Tool & Process Engineer, both in the summer 2018. (Doc. No. 1-1); *see Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 402 (6th Cir. 2008) (holding administrative exhaustion is a "prudential prerequisite to filing a claim in federal court."). Schnapp asserts no argument for equitable tolling of the ADEA statute of limitations, nor does he attempt to make his ADEA claim under a continuing violation theory. (*See* Doc. No. 23). Thus, this prior history is not probative of his current claim. *See Burzynski v. Cohen*, 264 F.3d 611, 621 (6th Cir. 2001) (upholding the exclusion of evidence where prior denials occurred outside the ADEA statute of limitations); *see also id.*, ("Simply alleging discrete acts of non-selections is not sufficient to establish a continuing violation.").

The ADEA prohibits an employer from discriminating "against any individual with respect to compensation, terms, condition, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish a violation by either direct or circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). "Regardless of the type of evidence submitted, the burden of persuasion remains on ADEA plaintiffs to demonstrate 'that age

was the 'but-for' cause of their employer's adverse action.'"  *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009)).  Here, Schnapp does not assert direct evidence, but instead contests summary judgment relying on circumstantial evidence.  (*See* Doc. No. 23 at 9).

When relying on circumstantial evidence, the plaintiff's claims proceed under the *McDonnell Douglas* burden-shifting framework.  *George v. Youngstown State Univ.,* 966 F.3d 446, 459 (6th Cir. 2020).  The plaintiff first must establish a prima facie case of discrimination.  *Id.*  If the plaintiff can do so, the burden shifts to the defendant to put forth a legitimate, non-discriminatory reason for its decision.  *Id.*  If the defendant provides such a reason, then the plaintiff must demonstrate the proffered reason was pretext for discrimination.  *Id.*

To show a prima facie case of age discrimination based on FCA's failure to promote him, Schnapp must show: (1) he is member of a protected class, (2) he applied for and was qualified for a promotion, (3) he was considered for and denied the promotion, and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time plaintiff's request for promotion was denied.  *Provenzano*, 663 F.3d at 812-13.

Beginning with the Industrial Engineer position, Schnapp cannot prove his prima facie case.  First, Schnapp admitted he had no reason to believe his age played a part in the decision not to hire him.  (Doc. No. 19-2 at 60-61).  But even setting aside this admission, the claim fails because Schnapp cannot present evidence that someone outside his protected class was promoted to the position.  (*See id.* at 61) (Q: Do you know whether anyone was offered this position? A: I do not know).  Schnapp presented no evidence that the position was ever filled, and more particularly, by someone outside his protected class; and as such, he has failed to carry his burden in establishing the fourth element of his prima facie case.  *See, e.g., Hodges v. City of Milford*, 918 F. Supp. 2d 721, 738 (S.D. Ohio 2013) (finding plaintiff failed to satisfy prima facie case where no employee was

promoted to the position at the time plaintiff applied); *Ross v. Mich. State. Univ. Bd. of Trs.*, No. 11-2278, 2012 WL 3240261, at *2 (6th Cir. June 20, 2012) (affirming failure to prove prima facie case where no promotion occurred while plaintiff's application for promotion was pending).

Even if this were not fatal to his prima facie case, Schnapp could not prove pretext. Where the position is never filled, it "establish[es] legitimate, nonpretextual reasons for not hiring [plaintiff] for those positions as a matter of law." *Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 502 (6th Cir. 2007).

Turning to the Tool & Process Engineer position, FCA argues Schnapp cannot establish his prima facie case because he was not qualified for, nor considered for this position. (*See* Doc. No. 19 at 17-18). In support, FCA points to Duke's affidavit which specifically lays out why he did not offer Schnapp an interview for this position. (*See* Doc. No. 20). However, this argument more appropriately belongs in the second step of *McDonnell Douglas. See White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005) (cautioning against conflating the objective first and subjective second steps of *McDonnell Douglas*).

When analyzing a plaintiff's qualifications at the prima facie stage, a court considers objective factors "includ[ing] the employee's education, experience, and 'demonstrated possession of the required general skills.'" *Wad v. Amazon.com*, No. 18-97-DLB-CJS, 2020 WL 1066985, at *4 (E.D. Ky. Mar. 4, 2020) (quoting *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)). The evidence provided, including Schnapp's testimony, establishes that he likely meets the basic, objective qualifications for the position. (*See* Doc. No. 19-6). Schnapp held a Bachelor's degree and was familiar with AutoCAD and CNC programming through both his coursework and work experience. (*See, e.g.*, Doc. No. 19-2 at 61-64; Doc. No. 23-3; Doc. No. 23-4 at 7). In this regard, Schnapp was similarly situated with Gonzalez, who also held a Bachelor's degree and whose

AutoCAD and CNC experience stemmed from both coursework and work experience.  (*See* Doc. 19-12).

Further, Schnapp was considered for the position, albeit at the preliminary stages, as evidenced by FCA's email declining to offer him an interview for the position.  (Doc. No. 19-10). Accordingly, I find Schnapp has established the elements of a prima facie case.  *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000) (plaintiff's burden at the prima facie stage is "not onerous" and is "easily met.").

In response, FCA asserts it had legitimate, nondiscriminatory reasons for not promoting Schnapp, mainly that he was not qualified for the position by virtue of his application, and Gonzalez was a more qualified candidate.  Duke's affidavit specifically lays out why he did not offer Schnapp an interview for this position.  (*See* Doc. No. 20 at 2-3).

For example, Duke averred Schnapp's application "failed to identify any familiarity with AutoCAD or CNC programming and failed to demonstrate how his previous work experience satisfied any of the position requirements."  (*Id.* at 2).  A review of the application Schnapp submitted for the position confirms Duke's statements.  (*See* Doc. Nos. 19-6 & 19-7).  Except for his education history, Schnapp's application conveys very little pertinent information.  (*See* Doc. No. 19-7).  The section regarding his work history over a 15-year period (1998-2013) contains one line in description: "PM Machinery," and does not even bring his work history current to the time of his application for the promotion in July 2018.  (*Id.*).

Further, there is no mention of MS Office, AutoCAD, or CNC programming at any point on his application – all basic qualifications listed in the job posting.  (*See* Doc. Nos. 19-6 & 19-7). Duke also expressed behavioral and motivational concerns as an explanation for why Schnapp was not offered an interview for the position.  (Doc. No. 20 at 2-3).

9

In contrast to Schnapp, Gonzalez held a Bachelor's degree in one of the preferred categories (Engineering Technology), and he also highlighted his specific coursework and experience working with AutoCAD and CNC on his resume.  (Doc. No. 19-12 at 5; Doc. No. 20 at 2).  His resume also noted proficiencies in MS Office and WCM methodologies, both of which are found in the job posting.  (*Id.*; *see also* Doc. No. 19-6).  Furthermore, Duke had received positive feedback regarding Gonzalez's prior work performance and work ethic, as compared with Duke's concerns over Schnapp's behavior and motivation.  (Doc. No. 20 at 2-3).  Duke's explanation regarding the quality of the candidates is sufficient to shift the burden back to Schnapp to establish the proffered reason is pretext for discrimination.

To demonstrate pretext, a plaintiff may show "the proffered reason: (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."  *Provenzano*, 663 F.3d at 815.  Schnapp raises two main disputes with Duke's explanation.  First, because Duke and Schnapp had both worked for FCA for a long time, "[i]t is preposterous to think that Duke somehow was unfamiliar with [ ] Schnapp's work experience so as to deny him even an interview . . .."  (Doc. No. 23 at 10).  Yet, Schnapp testified that Duke and he only had a passing familiarity with one another, (Doc. No. 19-2 at 72), and Schnapp confirmed that Duke had never been his supervisor.  (Doc. No. 23 at 7; *see also* Doc. No. 23-1 at 2).  Further, Schnapp testified that his AutoCAD experience was limited to coursework and his CNC experience was utilized only a "few times a year."  (Doc. No. 19-2 at 62).

Thus, according to Schnapp, Duke was to have gleaned actual, detailed knowledge of Schnapp's education and work history over the last 20 years merely because the two worked for the same company.  But this argument is no more than that – argument.  There is no evidence that Duke was aware of Schnapp's objective qualifications at the time the position was offered, and it is

undisputed that Schnapp's application failed to demonstrate any objective qualifications beyond the existence of his diplomas.  (*See* Doc. No. 19-7).

Second, Schnapp attacks Duke's reliance on the Rubinsaal incident as improper hearsay which should not be considered.  (Doc. No. 23 at 10).  Duke's affidavit is not submitted to prove that Schnapp mistreated Rubinsaal, but only to explain Duke's decision in not offering Schnapp an interview.  Regardless of whether Schnapp was actually involved in the incident, at the time Duke was considering candidates, he believed Schnapp was involved, and that belief factored into his decision.  *See* Federal Rule of Evidence 803(3) (excluded from hearsay is "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) . . .."); *see also Burks v. Yellow Transp., Inc.*, 258 F. App'x 867, 873-75 (6th Cir. 2008) (applying "honest belief" rule[4] to failure to promote claim).

Schnapp's pretextual arguments boil down to "a dispute over the facts upon which [the adverse action] was based[,]" which is insufficient to demonstrate pretext.  *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).  Other than the fact FCA hired Gonzalez, Schnapp presents no evidence of age discrimination.  (*See* Doc. No. 19-2 at 72) (Q: Do you have any reason to believe you weren't offered an interview because of your age? A: Yes. Q: Why do you believe that? A: Because the person they hired.).   But simply choosing a younger individual, by itself, does not establish pretext.  *Johnson v. Fifth Third Bank*, 685 F. App'x 379, 389 (6th Cir. 2017).  Where there is an absence of probative evidence of discrimination, "to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no

---

[4] The "honest belief" rule applies "[w]hen an employer reasonably and honestly relies on particularized facts in making employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless."  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009).

reasonable employer would have chosen the latter applicant over the former." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006).

Here, Schnapp cannot meet this burden even when the facts are viewed in the light most favorable to him. It is undisputed that the application Schnapp submitted for the Tool & Process Engineer position contained very little information on either his education or work history. (*See* Doc. No. 19-7). A comparison of Schnapp's and Gonzalez's written submissions to FCA for the Tool & Process Engineer position demonstrate that Gonzalez's qualifications better matched the job posting. (*See* Doc. Nos. 19-6, 19-7 & 19-12). But even viewing Schnapp's objective qualifications without reference to his application, the facts demonstrate that, at best, his qualifications are on par with Gonzalez's. Because Schnapp has provided no evidence that his qualifications "were significantly better" than Gonzalez's, he cannot avoid summary judgment. *See Bender*, 455 F.3d at 627. Schnapp has not carried his burden of establishing that FCA's proffered reason for declining to promote him was pretext for age discrimination.

## V.     CONCLUSION

According to the findings above, Schnapp has failed to raise a genuine issue of material fact with regard to his age discrimination claim, such that no reasonable juror could infer that FCA "intentionally discriminated" against him. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507 (1993) ("[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times on the plaintiff."). Thus, I grant Defendant FCA US LLC's motion for summary judgment and dismiss the case. (Doc. No. 19).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

12